STATE OF NORTH CAROLINA v. WENDELL MASON

No. 279A85

(Filed 18 February 1986)

1. **Rape and Allied Offenses § 4.3— in camera examination—manner of performing sex acts—improper questions**

Questions to a rape and sexual offense victim about the manner in which her assailant performed the act of sexual intercourse were not the proper subject of an *in camera* examination conducted pursuant to N.C.G.S. § 8C-1, Rule 412, and were properly excluded by the trial court. Also, the trial court did not abuse its discretion by precluding repetitive cross-examination of the victim about the extent of penetration and ejaculation by her assailant during the rape.

---

2. **Criminal Law § 33— relevant evidence—exclusion as prejudicial—discretion of trial judge**

   Whether to exclude relevant evidence under N.C.G.S. § 8C-1, Rule 403, because its probative value is substantially outweighed by possible prejudice, confusion or waste of time is a matter within the sound discretion of the trial judge.

3. **Criminal Law §§ 85.2, 169.3— testimony showing defendant was jail inmate— absence of prejudice**

   An officer's testimony that defendant was in the Lenoir County Jail when he compared a photograph of a shoe print at the scene of a rape with the bottom of the tennis shoes defendant was wearing did not unduly prejudice defendant by portraying him as a prison inmate since such testimony could not have increased the prejudice produced by the testimony of another witness on cross-examination by defendant that he had known defendant while they were in prison together.

4. **Criminal Law § 102.8— jury argument—failure of defendant to produce evidence**

   The prosecutor's jury argument that defendant had failed to produce witnesses and evidence to refute the State's case did not constitute an impermissible comment on defendant's failure to testify.

5. **Criminal Law § 102.9— jury argument—dangerousness of defendant—impropriety cured by instruction**

   The prosecutor's jury argument concerning the dangerousness of defendant which went beyond the evidence and incorporated matters of the prosecutor's personal knowledge and opinion was improper, but the impropriety was cured by the trial judge's act of sustaining defendant's objection and giving a curative instruction.

6. **Criminal Law § 102.6— jury argument—expertise and work load of law officers—no gross impropriety**

   The prosecutor's comments concerning the expertise and work load of the Onslow County law enforcement agencies were not so grossly improper as to require the trial court to intervene *ex mero motu* and did not magnify the prejudice of the prosecutor's improper argument concerning the dangerousness of defendant where defense counsel implied by questions asked the investigating officers on cross-examination that more extensive tests and comparisons should have been performed, and the prosecutor's comments were not an appeal to the jury to "do something about enforcing the law by convicting defendant" but were intended to point out to the jury that the investigating officers were not negligent in their investigation and that it was not practical for them to perform every possible test.

7. **Criminal Law § 102.6— jury argument—why witness changed testimony—no gross impropriety**

   Although the prosecutor improperly argued to the jury facts not in evidence and her opinions as to why a State's witness changed his testimony, the argument was not grossly improper so as to require the trial judge to in-

tervene *ex mero motu* where there was a conflict between the witness's pretrial statements and trial testimony; the prosecutor merely drew the logical inference from the evidence presented that the witness was reluctant to testify because he had served time with defendant; and the prosecutor never stated that the witness changed his testimony out of a fear of defendant but suggested that the witness was afraid to identify defendant because he would be labeled an informer.

**8. Kidnapping § 1; Rape and Allied Offenses § 7— first degree kidnapping—first degree rape—improper to convict of both offenses**

  Defendant could not properly be convicted and sentenced for first degree kidnapping as well as for first degree rape and first degree sexual offense where defendant was convicted of first degree kidnapping on the basis that he had sexually assaulted the victim during the kidnapping.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from the judgments entered by *Strickland, J.*, at the 31 December 1984 Criminal Session of ONSLOW County Superior Court.

Defendant was convicted of first degree rape, first degree sexual offense, and first degree kidnapping. He received concurrent sentences of life imprisonment for the rape and sexual offense and a consecutive twelve year sentence for the kidnapping.

The State's evidence tended to show that on 2 May 1984 Rebecca Hemmert, who was employed as a cab driver in Onslow County, picked up a passenger who directed her to go to the Lauradale subdivision. The passenger, a black male, sat in the front seat. When the cab reached the 200 block in Lauradale, the passenger pulled a knife, told Ms. Hemmert that he intended to rob her, and ordered her to stay calm. At that point he took Ms. Hemmert's money and the fares she had collected for operating the cab.

The passenger then directed Ms. Hemmert to drive to a house under construction in the Deerfield subdivision which is across the highway from Lauradale. While holding the knife, he forced Ms. Hemmert into the house and ordered her to disrobe. Ms. Hemmert was then forced to have vaginal intercourse and oral sex with her assailant while he held the knife to her throat. Upon completion of the sexual assaults, he took Ms. Hemmert to the part of the house where her clothes were located and gagged her. When two workmen approached the house, the assailant ceased his preparations to bind Ms. Hemmert and went out to

talk to them. He then ran away. Ms. Hemmert dressed herself and left the area in her cab.

Ms. Hemmert identified defendant as her assailant. A rape kit was prepared and at trial the State's expert, Joseph Taub, testified that he found spermatozoa present on the vaginal smear taken from Ms. Hemmert. It was his opinion that the sperm had probably been deposited in Ms. Hemmert less than twelve hours prior to collection and not more than twenty-four. He also testified that it was possible for sperm to be deposited in the vagina without a full ejaculation taking place. Ms. Hemmert testified at trial that defendant did not ejaculate during the vaginal intercourse.

*Lacy H. Thornburg, Attorney General, by Francis W. Crawley, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Acting Appellate Defender, by Gordon Widenhouse, for defendant-appellant.*

BRANCH, Chief Justice.

At the conclusion of the State's case defendant requested an *in camera* hearing pursuant to N.C.G.S. § 8C-1, Rule 412. Defendant's purpose in requesting the hearing was to attempt to elicit from Ms. Hemmert evidence which would tend to show that he did not perform the sexual acts to which she testified.

N.C. R. Evid. 412 in pertinent part provides that:

(a) As used in this rule, the term 'sexual behavior' means sexual activity of the complainant other than the sexual act which is at issue in the indictment on trial.

(b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:

(1) Was between the complainant and the defendant; or

(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or

(3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

(4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

(c) Sexual behavior otherwise admissible under this rule may not be proved by reputation or opinion.

(d) Notwithstanding any other provision of law, unless and until the court determines that evidence of sexual behavior is relevant under subdivision (b), no reference to this behavior may be made in the presence of the jury and no evidence of this behavior may be introduced at any time during the trial of:

(1) A charge of rape or a lesser included offense of rape;

(2) A charge of a sex offense or a lesser included offense of a sex offense; or

(3) An offense being tried jointly with a charge of rape or a sex offense, or with a lesser included offense of rape or a sex offense.

Before any questions pertaining to such evidence are asked of any witness, the proponent of such evidence shall first apply to the court for a determination of the relevance of the sexual behavior to which it relates. The proponent of such evidence may make application either prior to trial pursuant to G.S. 15A-952, or during the trial at the time when the proponent desires to introduce such evidence. When application is made, the court shall conduct an in camera hearing, which shall be transcribed, to consider the proponent's offer of proof and the argument of counsel, including any counsel for

State v. Mason

the complainant, to determine the extent to which such behavior is relevant. In the hearing, the proponent of the evidence shall establish the basis of admissibility of such evidence. Notwithstanding subdivision (b) of Rule 104, if the relevancy of the evidence which the proponent seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the in camera hearing or at a subsequent in camera hearing scheduled for that purpose, shall accept evidence on the issue of whether that condition of fact is fulfilled and shall determine that issue. If the court finds that the evidence is relevant, it shall enter an order stating that the evidence may be admitted and the nature of the questions which will be permitted.

Pursuant to N.C. R. Evid. 412 the trial judge convened an *in camera* hearing and required defendant's counsel to state what questions he intended to ask. Defense counsel proposed to ask Ms. Hemmert if she had been involved in any sexual activity during the twenty-four hours preceding the assault as well as a number of questions concerning the manner in which the act of rape was performed and her visual observations during the rape. The trial judge ruled that defendant could only ask Ms. Hemmert about sexual activity during the twenty-four hours preceding the assault. When he did so, Ms. Hemmert denied having engaged in any sexual activity during that period of time. When the trial judge asked if defendant had any other questions to offer, his counsel answered that he could think of nothing else to ask.

Defendant assigns as error the trial judge's refusal to allow him during the *in camera* hearing to ask all of the questions he proposed. He argues that his constitutional rights were violated because he was denied the full opportunity to present evidence, cross-examine witnesses, and in general make his offer of proof as provided by N.C. R. Evid. 412. We disagree.

The sixth amendment of the Federal Constitution as applied to the states through the fourteenth amendment guarantees the right of a defendant in a criminal trial to be confronted with the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 13 L.Ed. 2d 923 (1965). The principal purpose of confrontation is to secure to the defendant the right to test the evidence of the witnesses against him through cross-examination. *Davis v. Alaska*, 415 U.S.

308, 39 L.Ed. 2d 347 (1974). However, the right of cross-examination is not absolute and may be limited in appropriate cases. *State v. Fortney*, 301 N.C. 31, 36, 269 S.E. 2d 110, 113 (1980). Trial judges retain broad discretion to preclude cross-examination that is repetitive or that is intended to merely harass, annoy or humiliate a witness. *State v. Fortney*, 301 N.C. 31, 36, 269 S.E. 2d 110, 113; *Davis v. Alaska*, 415 U.S. 308, 316, 39 L.Ed. 2d 347, 353.

[1] In this case the trial judge acted well within his authority when he refused to allow defendant to question Ms. Hemmert about the manner in which her assailant performed the act of sexual intercourse. These questions did not present inquiry into evidence of sexual activity of Ms. Hemmert other than the sexual acts which were in issue, *i.e.*, the rape and sexual offense, and so were not the proper subject of an *in camera* examination conducted pursuant to N.C. R. Evid. 412. Further, defendant had already cross-examined Ms. Hemmert about the extent of penetration and ejaculation by her assailant during the rape, and the trial judge did not abuse his discretion by precluding repetitive cross-examination on that issue.

Defendant is simply in error when he claims that the trial judge terminated the hearing and denied his request for further examination after Ms. Hemmert testified that she had not engaged in any sexual activity in the twenty-four hours preceding the assault. Following Ms. Hemmert's negative answer the trial judge inquired of defendant's counsel whether he would like to proffer additional questions other than those that had already been ruled out. In declining to proffer further questions defense counsel stated that without having been able to ask any further questions, *i.e.*, those questions that the trial judge had forbidden, he had no idea what else to ask. Since defendant did not proffer additional questions, he cannot show that his constitutional rights were violated. This assignment of error is overruled.

[2] Defendant next assigns as error the State's introduction of testimony that contained references to his incarceration prior to trial. Defendant contends that these references were improper because they portrayed him as a prison inmate and their prejudicial effect outweighed their probative value. Defendant's objections were overruled and his motion for mistrial was denied.

"[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant. N.C.G.S. § 8C-1, Rule 401 (Cum. Supp. 1985). Relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (Cum. Supp. 1985). Unfair prejudice has been defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Commentary to N.C. R. Evid. 403. Whether or not to exclude evidence under Fed. R. Evid. 403 is a matter within the sound discretion of the trial judge. *United States v. MacDonald*, 688 F. 2d 224 (4th Cir. 1982). We believe the *MacDonald* rule is a proper interpretation of Fed. R. Evid. 403 and adopt it for our N.C. R. Evid. 403, which is identical to its federal counterpart.

In other than capital cases a motion for mistrial is addressed to the sound discretion of the trial judge, *State v. Yancey*, 291 N.C. 656, 664, 231 S.E. 2d 637, 642 (1977), and his ruling may be reversed for an abuse of discretion only upon a showing that it "was so arbitrary that it could not have been the result of a reasoned decision." *State v. Thompson*, 314 N.C. 618, 626, 336 S.E. 2d 78, 82 (1985).

[3] During the investigation of the crime, a shoe print made by a tennis shoe was discovered at the scene of the rape and photographed. Officer Steve Smith interviewed defendant in the Lenoir County Jail and following a *voir dire* testified that he compared a photograph of the shoe print with the bottom of the tennis shoes defendant was wearing at the time of the interview. During the interview defendant told Officer Smith that the shoes were not his and that they had been supplied to him by the jail or belonged to a cellmate. Officer Smith made inquiries at the jail and told defendant that the shoes were not supplied to him by the Lenoir County Jail. Defendant then told Officer Smith that the shoes were his. Defendant's objections to this testimony were overruled.

After carefully examining the testimony of Officer Smith, we hold that the trial judge did not err in allowing its admission into evidence.

Defendant's contention that reference to his presence in the Lenoir County Jail by Officer Smith unduly prejudiced him by portraying him as a prison inmate is untenable. Defendant had previously elicited testimony from State's witness Richard Parsons on cross-examination that Parsons had known defendant while they were in prison together. Officer Smith's testimony that defendant was in the Lenoir County Jail, presumably as a result of his arrest for the assaults on Ms. Hemmert, could not possibly have increased the prejudice produced by Mr. Parsons' testimony. Since defendant did not object to the testimony of Mr. Parsons concerning his prior incarceration, his objection and exception to the testimony of Officer Smith that he was in the Lenoir County Jail cannot be sustained. 1 Brandis on North Carolina Evidence § 30 (1982). *Cf. Durham v. Realty Co.*, 270 N.C. 631, 155 S.E. 2d 231 (1967). For the same reason, the trial judge properly denied defendant's motion for mistrial.

We next consider defendant's argument that the prosecutor's closing argument to the jury was improper and constituted prejudicial error. Defendant contends that the trial judge erred in failing to sustain his objection and in refusing to grant his motion for mistrial.

**[4]** During her argument the prosecutor pointed out to the jury that defendant had not exercised his rights to call witnesses and produce evidence to refute the State's case. Defendant objected, and the trial judge overruled the objection. Defendant argues that these statements by the prosecutor were an improper reference to his exercise of his constitutional right not to testify and that the trial judge committed prejudicial error in overruling his objection and refusing to grant a mistrial.

A prosecutor may not make any reference to or comment on a defendant's failure to testify. *State v. McCall*, 286 N.C. 472, 486, 212 S.E. 2d 132, 141 (1975) (interpreting N.C.G.S. § 8-54); *Griffin v. California*, 380 U.S. 609, 14 L.Ed. 2d 106 (1965) (fifth amendment as applied to the states through the fourteenth forbids comment by the prosecution on an accused's silence). However, a "defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State may properly be brought to the jury's attention by the State in its closing argument." *State v. Jordan*, 305 N.C. 274, 280, 287 S.E. 2d 827, 831 (1982).

In this case the prosecutor did no more than comment on defendant's failure to produce witnesses and evidence to refute the State's case. Such statements do not constitute an impermissible comment on defendant's failure to take the stand.

[5] Defendant also objects to certain of the prosecutor's arguments that he contends went beyond the scope of the evidence and invited the jurors to act on their fears and frustrations.

In one portion of her argument, the prosecutor stated:

I can tell you one thing, though. Wendell Mason is a dangerous man. I've been a prosecutor for four years, and three and a half of those years have been in Superior Court, prosecuting major felonies; prosecuting rapes, burglary, armed robberies; murder; all those, and I can tell you one thing, in the four years that I've been in this system as a prosecutor, this man right over there is the most dangerous man I have ever seen. He really is. You can tell he is dangerous. I've never seen so much security in a courtroom in my life.

Defendant objected and the trial judge instructed the jury to disregard the statement made by the prosecutor.

Arguments that a defendant is dangerous are proper when supported by evidence in the record. *State v. Ruof*, 296 N.C. 623, 635, 252 S.E. 2d 720, 728 (1979). This argument goes beyond the evidence because it incorporates matters of the prosecutor's personal knowledge and opinion. *State v. Britt*, 288 N.C. 699, 220 S.E. 2d 283 (1975). It was clearly improper, but the impropriety was cured by the trial judge's act of sustaining defendant's objection and giving a curative instruction. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976).

[6] Defendant contends that the prejudicial effect of the prosecutor's reference to his dangerousness is amplified by her statements concerning the investigation of the crime by local law enforcement agencies. The prosecutor argued that:

Mr. Raynor is going to bring out there's no fingerprints, and there's no telling what all else he's going to bring out. I'm sure of that, but I can tell you one thing. Onslow County has an excellent law enforcement agency, not only in the Sheriff's

Department, but in the Police Department, and they do an excellent job, but they can't do everything. I can't do everything, and everytime I go to try a case, I get to trying it and I realize there's something I should have done, but I didn't do; but there's not time to do everything. I'm spread thin; they're spread thin and they have a heavy case load and they do the best they can with all the case load they've got, but they can't devote all their time to one case, and they have done an excellent job on this case. You know, it's like the old saying I've always heard. You can't make a silk purse out of a sow's ear.

Defendant contends that the prosecutor was impermissibly appealing to the emotions of the jurors by imploring them to do their part for law enforcement and convict him. Defendant relies on *State v. Phifer*, 197 N.C. 729, 150 S.E. 353 (1929) (prosecutor improperly asked jury to do something about enforcing the law by convicting defendant), and a number of cases from other jurisdictions. *See also Boatwright v. State*, 452 So. 2d 666 (Fla. 1984) (error to ask jury to send a message that they will not tolerate crime); *Commonwealth v. Cherry*, 474 Pa. 295, 378 A. 2d 800 (1977) (arguments of this type invite jury to act unreasonably); *State v. Agner*, 30 Ohio App. 2d 96, 283 N.E. 2d 443 (1972) (error to tell jury that it has responsibility to stamp out drug traffic).

We first note that defendant did not object to this argument at trial. When counsel fails to object to the jury argument of opposing counsel the trial judge does not err in failing to intervene *ex mero motu* unless the argument was grossly improper. *State v. Miller*, 315 N.C. 773, 340 S.E. 2d 290 (1986); *State v. Craig and State v. Anthony*, 308 N.C. 446, 302 S.E. 2d 740, *cert. denied*, 464 U.S. 908, 78 L.Ed. 2d 247 (1983); *State v. Kirkley*, 308 N.C. 196, 302 S.E. 2d 144 (1983). Here we do not find the prosecutor's arguments to be grossly improper. Further, we do not find that the prosecutor's comments concerning the caliber of the Onslow County law enforcement agencies magnified the prejudice of her argument concerning the dangerousness of defendant.

During cross-examination defendant questioned the investigating officers concerning their methods of investigation and implied that more extensive tests and comparisons should have been

performed. The prosecutor apparently anticipated that defendant would argue to the jury that the investigating officers had not made a sufficiently thorough investigation. Her comments on the expertise and work load of the Onslow County law enforcement agencies were intended to point out to the jury that the investigating officers were not negligent in their investigation and that it was not practical for them to perform every possible test. This argument was not an appeal to the jury to "do something about enforcing the law by convicting defendant" and was not prejudicial under the circumstances. The prosecutor may defend his tactics, as well as those of the investigating authorities, when their propriety is challenged. *State v. Payne*, 312 N.C. 647, 665, 325 S.E. 2d 205, 217 (1985). *See also State v. Moose*, 310 N.C. 482, 313 S.E. 2d 507 (1984) (defendant opened the door to prosecutor's defense of his conduct by suggesting there was an "underhanded deal" involving a sentence reduction for the State's witness); *State v. Noell*, 284 N.C. 670, 202 S.E. 2d 750 (1974) (not prejudicial error for prosecutor to answer defense argument that the police had not done all they could to preserve evidence of the crime by stating that the police could not ignore all other matters and concentrate solely on defendant's rape case), *death sentence vacated*, 428 U.S. 902, 49 L.Ed. 2d 1205 (1976).

[7] Lastly, defendant argues that the prosecutor's lengthy statement regarding the testimony of State's witness Richard Parsons was plain error. Again, since defendant failed to object to this argument the proper standard of review as previously stated is whether the prosecutor's argument was grossly improper.

Detective Simpson testified that prior to trial Mr. Parsons identified defendant from a photographic lineup as the black male he had observed at the scene of the crime. When examined by the State, Mr. Parsons admitted that he had selected a picture of defendant as one closely resembling the man he had seen at the time the crime was committed. However, he stated that he could not identify defendant as the man that he had seen. During cross-examination Mr. Parsons also admitted that he had known defendant while they were in prison together.

In her closing argument, the prosecutor pointed out to the jury the inconsistency of Mr. Parsons' in-court testimony with his pretrial statement. Her explanation for Mr. Parsons' behavior is as follows:

Now, I'm sure you twelve people thought I was the most foolish person in the world yesterday, and I felt sort of foolish in a way, but I can assure you one thing, I was just as shocked at his testimony as you were. Now, Mr. Simpson testified that he talked to that man on May, the second, and as I recall around May the 23rd, and I talked to him too, and I can assure you I don't know what happened to him, but something happened between the time Mr. Simpson and I talked to him and the time he testified yesterday. He had a change of heart. Of course, I had my suspicions as to what happened and I'm sure you may have, too. As I recall, somehow he volunteered the information on this witness stand that he had a vision that he had, I believe his words were that he and Wendell Mason, the defendant, had served time together in Newport and that he knew Wendell and didn't realize he knew him until he got on the witness stand and then all of a sudden, Richard Parsons didn't know a thing, didn't know anything about anything. Didn't know anything. Well, there's a word that I'm very familiar with that you twelve people I'm sure don't know. It's a word called 'snitch' . . . . [A snitch is] a person that tells on somebody else or a person who testifies against somebody else, and one inmate doesn't testify against another one. They don't tattletale, and I'll tell you why they don't. Because it's a rough life, because by Richard Parsons testifying, his life could be made miserable. He would be a snitch; he'd have to live the rest of his life as a snitch and he'd never make it if he was back in prison. Never. And even if he was out, he wouldn't make it, because everybody knows a snitch and they remember them, and that's why he had a change of heart.

Defendant contends that in these statements the prosecutor improperly expressed her opinion as to Mr. Parsons' honesty and defendant's dangerousness in light of his implied ability to coerce Mr. Parsons into changing his testimony. Defendant argues that the trial judge should have excluded this portion of the prosecutor's argument *ex mero motu*.

"Arguments of counsel are largely in the control and discretion of the trial court." *State v. Huffstetler*, 312 N.C. 92, 111, 322 S.E. 2d 110, 122 (1984), *cert. denied*, --- U.S. ---, 85 L.Ed. 2d 169 (1985). The trial judge's decision to allow improper argument will

not be reversed unless the impropriety of the remarks is extreme and is clearly calculated to prejudice the jury. *Id.* The parties may argue to the jury the facts and all reasonable inferences to be drawn therefrom. *Id.* at 112, 322 S.E. 2d at 123.

We hold that the prosecutor improperly argued to the jury her opinions as to why Mr. Parsons changed his testimony and facts not in evidence. *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283. *See State v. Huffstetler,* 312 N.C. 92, 322 S.E. 2d 110. Though erroneous, we hold that the prosecutor's argument was not grossly improper in light of the conflict between Mr. Parsons' pretrial statements and his trial testimony. The prosecutor merely drew the logical inference from the evidence admitted through Mr. Parsons and Detective Simpson that Mr. Parsons was reluctant to testify because he had served time with defendant in prison. Contrary to defendant's argument, the prosecutor was not so much attacking Mr. Parsons' honesty as she was attempting to explain the inconsistencies in his testimony. Likewise, the prosecutor never stated that Mr. Parsons changed his testimony out of a fear of defendant. Rather, she suggested that Parsons was afraid to identify defendant because he would be labeled an informer and subjected to the obloquy and, should he be imprisoned in the future, the danger that name brings.

We hold that viewed separately or together the prosecutorial arguments to which defendant objects are not reversible error and that the trial judge did not abuse his discretion in denying defendant's motion for mistrial.

[8] Lastly, defendant assigns as error his conviction of, and sentencing for, first degree kidnapping as well as for first degree rape and first degree sexual offense. We agree.

Defendant was convicted of first degree kidnapping on the basis that he had sexually assaulted Ms. Hemmert during the kidnapping. For the reasons stated in *State v. Freeland,* 316 N.C. 13, 340 S.E. 2d 35 (1986), defendant may not be separately punished for each offense. Therefore, a new sentencing hearing is required. The trial court may arrest judgment on the first degree kidnapping conviction and resentence for second degree kidnapping, or it may arrest judgment on one of the sexual assault convictions.

New sentencing hearing.