STATE OF NORTH CAROLINA v. ERIC LEE GILLIAM AND JEFFERY JEROME BATTLE

No. 704A85

(Filed 2 July 1986)

1. **Constitutional Law § 60; Jury § 7.14— jury selection—peremptory challenges —removal of black veniremen**

The decision of *Batson v. Kentucky*, 476 U.S. ---, 90 L.Ed. 2d 69, holding that a defendant can establish a prima facie case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at his trial, does not apply retroactively to a case in which the jury was selected prior to the filing of *Batson.* Furthermore, defendants failed to show that the prosecutor's use of peremptory challenges to excuse blacks from the venire violated the test set forth in *Swain v. Alabama,* 380 U.S. 202, 13 L.Ed. 2d 759. Amendment XIV to the U.S. Constitution; Art. I, Sections 19 and 24 of the North Carolina Constitution.

2. **Criminal Law §§ 33.1, 42.4— kidnapping, rape, robbery—knives not identified by victim —introduction no error**

The trial court did not err in a prosecution for kidnapping, rape, and robbery by allowing the State to introduce into evidence a straight razor and several knives found in the car in which they were arrested or on the person of another occupant of the car where the State produced evidence that one of the defendants had threatened the victim with a knife when they abducted her; one of the three assailants had told her that he liked her, would be back for her, and that she would be shot if she reported the crimes; defendants came to her apartment around 1:00 a.m. approximately five nights after the assaults; they beat on the door and attempted to open it before leaving when a neighbor stepped outside his apartment; and the knives and razor were found when the car was stopped by sheriff's deputies a short distance from the apartment. Defendants made identity an issue by pleading not guilty and denying that they were the assailants; therefore the State was entitled to introduce any evidence of other crimes by defendants which would tend to establish their identity as the perpetrators of the kidnapping and the sexual assaults committed against the victim. N.C.G.S. § 8C-1, Rule 401, N.C.G.S. § 8C-1, Rule 404(b).

**3. Criminal Law § 102.6— kidnapping, rape, robbery—prosecutor's argument concerning knives and a razor—no error**

> The trial judge in a prosecution for kidnapping, rape, and robbery did not err by permitting the prosecutor to refer to several knives and a straight razor found in defendants' possession at the time of their arrest where the knives were admissible as evidence tending to identify defendants as the assailants and the prosecutor's argument in context did not invite the jury to speculate as to which of the five knives and straight razor was the weapon involved in the kidnapping and sexual assaults.

APPEAL by defendants pursuant to N.C.G.S. § 7A-27(a) from the judgments entered by *Johnson, J.,* at the 24 June 1985 Criminal Session of CUMBERLAND County Superior Court. We allowed defendants' motions to bypass the Court of Appeals on the Class D felonies.

Both defendants were convicted of one count of first degree rape, first degree sexual offense, robbery with a dangerous weapon, and first degree kidnapping. Each received a life sentence for first degree rape and a consecutive life sentence for first degree sexual offense. They also received two forty-year terms for robbery with a dangerous weapon and first degree kidnapping, those sentences to run consecutively to the sentences of first degree sexual offense.

The State's evidence tends to show that on 17 June 1984 Sharon Maness, while attempting to exit her car, was abducted in front of her apartment by two black males. One of the assailants demanded money and produced a knife which Ms. Maness described as very pointed, with a slope and curve. Ms. Maness handed over her wallet which contained approximately $75.00. The assailants then entered the car and drove to a secluded area where each of them, and a third man who met them shortly after they arrived, sexually assaulted Ms. Maness.

Following the assaults one of the assailants told Ms. Maness that if she reported the assaults she would be in danger because they (the assailants) had friends and that she would be shot within two days. He also told her that he liked her and would be back for her. The assailants then told Ms. Maness to wait ten minutes before leaving, and left in the third man's car.

Ms. Maness waited as she had been ordered before driving back to her apartment. The next day she called the Sheriff's Department and gave descriptions of the three men.

Approximately five nights after the assaults someone knocked on the door of Ms. Maness's apartment at around 1:00 a.m. Ms. Maness looked out the window and saw defendants Gilliam and Battle whom she recognized as being the two men who had abducted her. Ms. Maness then called the Sheriff's Department.

Defendants were observed knocking on Ms. Maness's door by Deputy Mobley who was watching her apartment. Deputy Mobley testified that one of the defendants banged on the door, turned the doorknob, and shook the door. After a neighbor came out to talk to the defendants they returned to their car and attempted to drive away. Several deputies stopped the car, which was being driven by defendant Gilliam, and arrested the defendants and two other men who were in the car. The deputies then searched the four men and the car.

A pocketknife, a straight edge razor, and a handcuff key were found on a passenger named Raymond Eugene Brown who was charged along with defendants Gilliam and Battle. A Rapela fillet knife was found in the pocket of the driver's door, and a Schrade lockblade knife was found under the driver's seat. A small black-handled case knife was found in the rear floorboard, and a buck pocketknife was found on the console of the vehicle.

The knives and straight razor were admitted into evidence over defendants' objections.

Defendants offered no evidence.

*Lacy H. Thornburg, Attorney General, by Ann Reed, Special Deputy Attorney General, for the State.*

*Jay Trehy, Assistant Public Defender, for defendant-appellant Gilliam.*

*John G. Britt, Jr., Assistant Public Defender, for defendant-appellant Battle.*

BRANCH, Chief Justice.

[1] Defendants' first assignment of error concerns the use of peremptory challenges by the prosecutor to remove blacks from the venire. They argue that the prosecutor excused qualified blacks from the venire solely on account of their race and thereby violated the defendants' rights to due process of law and equal protection of the law under the fourteenth amendment to the Federal Constitution and Article I, Sections 19 and 24 of the North Carolina Constitution.

In the recent case of *Batson v. Kentucky*, 476 U.S. ---, 90 L.Ed. 2d 69, 54 U.S.L.W. 4425 (filed 30 April 1986), the United States Supreme Court overruled the requirement of *Swain v. Alabama*, 380 U.S. 202, 13 L.Ed. 2d 759, *reh'g denied*, 381 U.S. 921, 14 L.Ed. 2d 442 (1965), that a black defendant must show that prosecutors in the judicial district in which he was tried had over a period of time systematically used peremptory challenges to remove blacks from petit juries. Under the rule laid down by *Batson*

> a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
>
> . . . .
>
> Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.

*Batson*, 476 U.S. at ---, 90 L.Ed. 2d at 87, 54 U.S.L.W. at 4430 (citations omitted).

The record reveals that the prosecutor in this case challenged peremptorily five of the six blacks called to the jury. One black, a retired noncommissioned army officer, was seated on the jury. Prior to the impaneling of the jury counsel for both defendants moved to strike the entire venire or those jurors who had been passed. These motions were denied by the trial judge. At the end of the State's case, these motions were renewed in the form of motions for mistrial and were again denied. The prosecutor did not provide any reason for his peremptory challenges of black veniremen.

In the recent case of *State v. Jackson*, 317 N.C. 1, 343 S.E. 2d 814 (1986), we examined the rulings of the United States Supreme Court on the retroactivity of decisions of that Court affecting rights secured by the Federal Constitution and held that the ruling in *Batson v. Kentucky* applied only to those cases in which jury selection occurred after the *Batson* decision was rendered. *State v. Jackson*, 317 N.C. at 21, 343 S.E. 2d at 826. Since jury selection in the instant case occurred prior to the filing of *Batson*, that decision is inapplicable. Therefore, to establish that the prosecutor's use of peremptory challenges to excuse blacks from the venire deprived them of the equal protection of the law, defendants must meet the test set out in *Swain v. Alabama. State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death sentence vacated, Carter v. North Carolina*, 429 U.S. 809, 50 L.Ed. 2d 69 (1976). *See also State v. Lynch*, 300 N.C. 534, 268 S.E. 2d 161 (1980). This they have failed to do.

Defendants have asked this Court to hold that the use of peremptory challenges by the prosecutor in this case to remove blacks from the venire violates Article I, Sections 19 and 24 of the North Carolina Constitution. However, they have cited no authority nor made any arguments based on the language of the pertinent constitutional provisions to support their position. Questions raised by assignments of error but not presented and discussed in a party's brief are deemed abandoned. N.C. R. App. P. 28(a). Thus, defendants have abandoned any question concerning the North Carolina Constitution.

This assignment of error is overruled.

[2] By their remaining assignments of error which were briefed and argued, defendants contend that the trial judge committed

prejudicial error by allowing the State to introduce into evidence the straight razor and knife found on the person of Raymond Eugene Brown and the knives found in the car occupied by defendants at the time of their arrest. Because Ms. Maness never identified any of the weapons as the one used by her assailants, defendants argue that the only reason for the introduction of these weapons was to impeach their character by showing them to be guilty of having concealed weapons in their automobile and to generally arouse the emotions of the jury against them. Also, defendants argue that the trial judge committed prejudicial error by allowing the prosecutor to refer to the knives and razor in his closing argument.

N.C.G.S. § 8C-1, Rule 404(b), states that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

This is essentially a codification of the rule announced in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). "If . . . there is evidence that the crime charged and another offense were committed by the same person, and identity is an issue, evidence of the other offense is admissible for the purposes of establishing the identity of the defendant as the perpetrator of the crime charged." *State v. Williams*, 308 N.C. 357, 359-60, 302 S.E. 2d 438, 440 (1983).

In the instant case the State produced evidence that one of the defendants had threatened Ms. Maness with a knife when they abducted her and that one of the three assailants had told her that he liked her and would be back for her and that she would be shot if she reported the crimes. Approximately five nights after the assaults defendants Gilliam and Battle came to Ms. Maness's apartment around 1:00 a.m. They beat on the door and attempted to open it before leaving when a neighbor stepped outside his apartment. When their car was stopped by Sheriff's deputies a short distance from the apartment and its occupants were arrested and searched, Brown was found to have a knife and straight razor concealed on his person, three other knives were

found concealed in various locations in the car, and one was found on the console.

By entering pleas of not guilty and denying that they were Ms. Maness's assailants, defendants have made identity an issue in this case. *State v. Perry*, 275 N.C. 565, 570, 169 S.E. 2d 839, 843 (1969). Therefore, the State was entitled to introduce into evidence any evidence of other crimes by defendants which would tend to establish their identity as perpetrators of the kidnapping and sexual assaults committed against Ms. Maness. *State v. Williams*, 308 N.C. 357, 359-60, 302 S.E. 2d 438, 440. Their action in coming to her apartment heavily armed just a few days after the kidnapping and sexual assaults and then attempting to gain entry to her apartment raises a reasonable inference that they were "coming back for her" or had returned to carry out the threat that Ms. Maness would be harmed if she reported the crimes committed against her. This evidence clearly bears on the issue of identity. It is relevant evidence under N.C.G.S. § 8C-1, Rule 401 and is a recognized exception to the prohibitions set forth in N.C.G.S. § 8C-1, Rule 404(b). Therefore, we hold that the trial judge did not err in admitting the knives and razor into evidence.

[3] We next consider defendants' objection to the prosecutor's reference to the knives and razor in his final argument. They contend that his argument invited the jury to speculate as to which, if any, of the weapons were involved in the crime and that it likely caused the jurors to be less able to give a reasoned consideration to the evidence.

"Arguments of counsel are largely in the control and discretion of the trial court." *State v. Huffstetler*, 312 N.C. 92, 111, 322 S.E. 2d 110, 122 (1984), *cert. denied*, 471 U.S. 1009, 85 L.Ed. 2d 169 (1985). "The trial judge's decision to allow improper argument will not be reversed unless the impropriety of the remarks is extreme and is clearly calculated to prejudice the jury. The parties may argue to the jury the facts and all reasonable inferences to be drawn therefrom." *State v. Mason*, 315 N.C. 724, 736-37, 340 S.E. 2d 430, 438 (1986) (citations omitted).

The statement of which defendants complain and relevant preceding portions of the prosecutor's argument are as follows:

So let's take a look at the evidence. Miss Maness told you what happened to her and she gave descriptions of the people involved. And the descriptions she gave with regard to number one was [sic] written up by Detective Wiggs.

He [sic] said number one was age twenty-two. When Eric Gilliam was arrested he was age twenty. Not much diference [sic] there at all.

He was a black male, height five eleven. A two inch difference. Weight, one sixty-five to one seventy. He weighs one seventy-one.

When asked to describe number two she says he is twenty-two to twenty-three years old. Sure enough he is twenty-two years old. Black male, six foot or over. He is six foot three. Weight, one ninety to one ninety-five. A little off on the weight. But you've got to consider her situation. She is comparing people of different sizes and that sort of thing.

You may be a good judge of weight yourself. But I dare say if you discussed it back there you would find some among your crowd that is [sic] not.

But more particularly the other descriptions given. She talks about a purple or burgandy jogging suit with stripes down the side and a hat to match it. When they are picked up, what is this defendant, Battle, wearing?

She talks about sunglasses being on one of them. Sure enough, what is found in the car?

She talks about them having—one of them having handcuffs. And what is found in the car?

She was assaulted with a knife. Well, folks, take your pick: one, two, three, four, five knives and a straight razor.

MR. BRITT: Objection. And move to strike.

COURT: Objection is overruled. And motion to strike is denied.

When the prosecutor's final statement is viewed in context it is clear that he was not inviting the jury to speculate as to which of the five knives and straight razor was the weapon involved in

the kidnapping and sexual assaults. The theme of this portion of the prosecutor's argument was that Ms. Maness's identification of defendants and Brown as her assailants was trustworthy because it was based on accurate descriptions of their age, clothing, physical characteristics, and objects in their possession when they were arrested. Because the circumstances of defendants' arrest near Ms. Maness's apartment tend to identify them as her assailants the prosecutor was entitled to refer to the fact that a handcuff key had been found on Brown and that knives were found in defendants' possession at the time of their arrest to corroborate Ms. Maness's statements to law enforcement officials that she was threatened with a knife and that one of her assailants had a pair of handcuffs. The prosecutor was merely inviting the jury to draw the reasonable inference that defendants' possession of the knives corroborated Ms. Maness's statements and testimony, particularly her identification testimony. *State v. Mason*, 315 N.C. 724, 736-37, 340 S.E. 2d 430, 438; *State v. Huffstetler*, 312 N.C. 92, 111, 322 S.E. 2d 110, 122. Since the knives were admissible as evidence tending to identify defendants as Ms. Maness's assailants the prosecutor's statement concerning them was entirely proper. Though there was no evidence that a razor was used during the kidnapping and sexual assaults the prosecutor's statement that Ms. Maness was assaulted with a knife made it clear that the razor could not have been the weapon defendants used during the commission of those crimes. His technically improper reference to the razor was not calculated to prejudice the jury, and the trial judge did not abuse his discretion in overruling defendants' objections. *State v. Mason*, 315 N.C. 724, 736-37, 340 S.E. 2d 430, 438; *State v. Huffstetler*, 312 N.C. 92, 111, 322 S.E. 2d 110, 122. Therefore, we hold that the trial judge did not err in overruling defendants' objections to the prosecutor's argument.

For the reasons stated, defendant received a fair trial free from prejudicial error.

No error.