Justice ERVIN dissenting.
*323 I do not believe, for the reasons set forth in more detail below, that the trial court impermissibly limited defendant's ability to cross-examine Ms. Malachi. On the contrary, while the trial court did sustain the State's objections to certain questions that defendant attempted to pose to Ms. Malachi on cross-examination, the record clearly reflects that defendant "was ... able to get his contentions before the jury," State v. Ray , 336 N.C. 463, 473, 444 S.E.2d 918, 925 (1994), and the Court has not identified any information necessary to support his bias-related challenge to Ms. Malachi's credibility that the jury did not hear. As a result, I respectfully dissent from the Court's decision to affirm the Court of Appeals' decision to award defendant a new trial.
As a general proposition, the scope of cross-examination is committed to the sound discretion of the trial court. In other words, "defendant's right to cross-examination is not absolute," State v. Guthrie , 110 N.C. App. 91, 93, 428 S.E.2d 853, 854 (1993), with "the scope of cross-examination [being] subject to appropriate control in the sound discretion of the court." State v. Coffey , 326 N.C. 268, 290, 389 S.E.2d 48, 61 (1990) ; see also Davis v. Alaska , 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974) (stating that the right of cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation"); State v. Ward , 354 N.C. 231, 261, 555 S.E.2d 251, 270 (2001) (holding that "the limits placed by the trial court on defendant's cross-examination of these witnesses [constituted] an appropriate exercise of its discretion" given that "the questions called for incompetent hearsay testimony, were unduly repetitive or argumentative, or were simply improper in form"); State v. Mason , 315 N.C. 724, 730, 340 S.E.2d 430, 434 (1986) (stating that "trial judges retain broad discretion to preclude cross-examination that is repetitive").
The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend VI. In Davis , the United States Supreme **450 Court held that the defendant had a Sixth Amendment right to question a witness who was on probation about his probationary status in order to establish that the witness might be motivated to testify for the prosecution for the purpose of reducing or eliminating his own exposure to criminal prosecution or other adverse consequences. Davis , at 415 U.S. 316-319, 94 S. Ct. at 1110-11, 39 L. Ed.2d at 347. Even in that context, however, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant[, with] 'the Confrontation Clause [serving to] guarantee[ ] an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " Delaware v. Van Arsdall , 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674, 683 (1986) (quoting Delaware v. Fensterer , 474 U.S. 15, 20, 106 S. Ct. 292, 295, 88 L. Ed. 2d 15 (1985) (per curiam) (emphasis in the original)).
A number of decisions of this Court have considered the appropriateness of various trial court rulings concerning the extent to which criminal defendants were entitled to cross-examine prosecution witnesses concerning pending criminal charges for the purpose of showing that those witnesses were biased in favor of the prosecution and against the defendant. For example, in State v. Prevatte , 346 N.C. 162, 162-64, 484 S.E. 2d 377, 377-79 (1997), the defendant was under indictment for nine counts of forgery and uttering. The trial court refused to allow the defendant to question or elicit testimony from a prosecution witness concerning that witness's pending charges for the purpose of establishing that the witness "had been promised or expected anything in regard to the charges in exchange for his testimony." Id. at 163, 484 S.E.2d at 378. In holding that the trial court's ruling was erroneous and awarding the defendant a new trial, this Court stated, in reliance upon Davis , that, *324 when the State "had a strong[ ] weapon to control the witness," such as the ability to utilize the plea negotiation process to persuade the witness in question to testify on behalf of the State, the defendant must be allowed to question the witness concerning his or her pending criminal charges. Id. at 164, 484 S.E.2d at 378-79.
On the other hand, in State v. Atkins , 349 N.C. 62, 80-81, 505 S.E.2d 97, 109 (1998), the trial court, after refusing to allow the defendant to question the State's principal witness about whether she could receive the death penalty in the event that she declined to testify for the State, permitted the defendant to ask the witness "[w]hat kind of promises **451 ... has the State made you in exchange for your testimony," to which the witness replied, simply, "None." Atkins , 349 N.C. at 81, 505 S.E.2d at 109. Although the defendant in Atkins challenged the trial court's decision to sustain the State's objection to the question asking, "[s]o you can't get the death penalty, can you," on appeal, this Court rejected defendant's contention that the trial court's ruling impermissibly interfered with his confrontation rights on the grounds that "[t]he trial court allowed exactly the type of questioning mandated by Prevatte " and that "[d]efendant was clearly allowed to inquire into any potential bias of [the witness] based upon any arrangement between the witness and the prosecution." Id. at 80-81, 505 S.E.2d at 109. As a result, this Court's confrontation-related jurisprudence focuses upon whether the defendant was allowed to engage in sufficient cross-examination to support an argument to the jury that the witness was biased in favor of the prosecution rather than upon whether the trial judge sustained an objection to any particular question.
As the majority notes, limitations upon the scope of cross-examination imposed by trial judges are reviewed on appeal using an abuse of discretion standard. See State v. McNeil , 350 N.C. 657, 678, 518 S.E. 2d 486, 499 (1999). "[A] trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." State v. McGrady , 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (quoting State v. Riddick , 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) ). "Absent a showing of an abuse of discretion or that prejudicial error has resulted, the trial court's ruling will not be disturbed on review." State v. Maynard , 311 N.C. 1, 10, 316 S.E.2d 197, 202-03 (1984).
A careful examination of the record reveals that defendant was afforded ample opportunity to cross-examine Ms. Malachi concerning her pending Guilford County drug charges, which had been the subject of communications with those responsible for prosecuting defendant. In anticipation of trial, the State filed a motion in limine seeking the entry of an order that, among other things, precluded defendant from cross-examining Ms. Malachi about the criminal charges that were pending against her in Guilford County. Prior to the beginning of the trial, the trial court heard arguments concerning the State's motion in limine. At the conclusion of those arguments, the trial court determined that:
[H]aving heard arguments of counsel, having reviewed the motion on the limited question of whether or not the charges and any potentially favorable treatment as a result **452 - that testimony will be allowed , and the motion is overruled to that limited extent.
The defendant will be allowed to ask about the nature of the charges and what the defendant knew about any potential deals or favorable treatment as a result of her testimony here .
In reaching that decision, I have done a balancing test. And I find that it is relevant. I also find that it's - in order to actually get a context requires a little bit of background to it. But it's not going to be at this point an in-depth discussion of those facts.
(emphasis added). After the completion of Ms. Malachi's testimony on direct examination and prior to the beginning of her cross-examination, the trial court conducted additional proceedings out of the presence of the jury for the purpose of addressing a number of potential evidentiary issues, including the extent to which defendant would be allowed to question Ms. Malachi concerning her *325 pending criminal charges. Following a recitation of the questions that defendant intended to ask Ms. Malachi concerning those pending charges, the trial court delineated the scope of the cross-examination questioning that it intended to permit:
You may ask if she - you may ask about the charges. You may ask if she has been offered any incentive to testify. And you may ask if she is hoping to gain a benefit, either a reduction in sentence if she pleads guilty or otherwise, as a result of her testimony here. You may also ask her - and it may be a lead-up question - if she's aware of the potential sentences that she would be facing.
During her cross-examination in the presence of the jury by defendant's trial counsel, Ms. Malachi testified that
Q. Isn't it true on [21 January 2015], you were charged by the High Point Police Department with one count of trafficking in methamphetamine, one count of conspiracy to traffic in methamphetamine, one count of trafficking in marijuana and one count of conspiracy to traffic in marijuana?
....
A. Yes, sir.
**453 Q. And those charges are still pending, are they not?
A. Yes, sir.
After establishing that Ms. Malachi knew that "the trafficking in methamphetamine and the conspiracy to traffic in methamphetamine carry a sentence of 90 months minimum to 120 months maximum," that "the trafficking in marijuana charges" "each ... carr[y] a mandatory sentence of 25 months minimum to 30 months maximum active prison time," that these cases were pending in Guilford County, and that she was represented by counsel, the following additional proceedings occurred:
Q. What, if anything, have you been offered from the State at this point regarding those pending charges?
A. I don't know nothing about that.
Q. So nothing has been finalized in Guilford County?
MR. TAYLOR: Objection.
THE COURT: Sustained.
BY MR. JAMES:
Q. You're not aware of any current plea offer at this point. Correct?
A. Yes, sir.
Q. Have you - are you aware that there are such things as plea offers?
MR. TAYLOR: Objection.
THE COURT: I'll allow that one question.
BY MR. JAMES:
Q. Ma'am?
A. Yes, sir.
Q. What, if anything, do you hope to gain out of testifying here for the State with regard to those five pending charges?
A. Justice for Anthony Johnson.
**454 Q. So you don't think you're going to get anything out of it for the charges you got?
MR. TAYLOR: Objection.
THE COURT: Sustained.
BY MR. JAMES:
Q. Are you aware of any other considerations you might have for those pending charges right now?
MR. TAYLOR: Objection.
THE COURT: Sustained.
As a result, defendant's trial counsel was allowed to establish that, at the time of defendant's trial, Ms. Malachi had been charged in Guilford County with one count of trafficking in methamphetamine, one count of conspiracy to traffic in methamphetamine, one count of trafficking in marijuana, and one count of conspiracy to traffic in marijuana; that she faced sentences of 90 to 120 months imprisonment in each of the methamphetamine-related cases and sentences of 25 to 30 months imprisonment in each of the marijuana-related cases; that she was aware of the plea negotiation process; that she was not aware that any plea offer had been extended to her in these Guilford County cases; and that she "hoped to gain" "[j]ustice for Anthony Johnson" by testifying for the State against defendant. I am hard put to understand why this information, without more, does not suffice to support an argument to the jury that Ms. Malachi was biased in favor of the State and against defendant by virtue of the leverage given to the State by virtue of *326 the existence of these pending Guilford County charges.
In holding that the trial court placed impermissible limitations upon defendant's ability to cross-examine Ms. Malachi about the potentially biasing effect of her pending Guilford County drug charges, the Court focuses solely upon the fact that the trial court sustained the State's objections to questions inquiring whether anything "had been finalized in Guilford County," whether she thought that she was "going to get anything out of [testifying] for the charges you got," and whether she was "aware of any other considerations you might have for her pending charges right here." Although the Court states that, "[b]y limiting [Ms.] Malachi's testimony, the court prohibited the jury from considering evidence that could have shown bias on [Ms.] Malachi's part," the record contains no support for the Court's apparent assumption that Ms. Malachi's answers to the questions to which the State's objections were sustained would have benefitted defendant. On the contrary, Ms. **455 Malachi testified on voir dire that she was not expecting to receive any benefit for testifying on the State's behalf at defendant's trial and that the only goal that she sought to achieve by testifying for the State against defendant was to obtain justice for Anthony Johnson.
In addition, the record reflects that the trial court had ample justification for sustaining the State's objections to each of the three questions upon which the Court's decision rests and certainly did not act in an arbitrary and capricious manner in making the challenged rulings, particularly given the extensive cross-examination of Ms. Malachi that the trial court otherwise allowed.[1] After the trial court sustained the State's objection to defendant's question inquiring whether anything had "been finalized in Guilford County," the trial court allowed defendant to ask Ms. Malachi whether she was "aware of any current plea offer at this point" and received what amounted, in substance, to a negative answer. Thus, the record establishes that Ms. Malachi actually provided the information that defendant sought to obtain by posing the first question to which the trial court sustained the State's objection. Furthermore, the questions to which the second and third of the State's successful objections were directed inquired if Ms. Malachi thought that she was "going to get anything out of [testifying] for the charges you got" and if she was "aware of any other considerations she might have for those pending charges right now." Immediately prior to the posing of these questions, defendant had asked Ms. Malachi what she "hope[d] to gain out of testifying here for the State with regard to those five pending charges" and was told, consistently with the answer that she had given to essentially the same question on voir dire, "[j]ustice for Anthony Johnson." Aside from the fact that Ms. Malachi had already effectively answered the second of these two questions when she testified that she did not have a plea offer at the time that she testified for the State at defendant's trial, the second and third of the three questions to which the trial court sustained the State's objections essentially repeated a question that the trial court had already allowed defendant to pose and that Ms. Malachi had already answered.[2] As a result, rather than impermissibly **456 constraining defendant's ability to question Ms. Malachi concerning bias-related issues arising from the existence of the charges that were pending against her in Guilford County, the trial court rulings to which the Court's holding is directed represent nothing more than the appropriate exercise of the trial court's discretion to control the scope and extent of cross-examination for the purpose of preventing confusion and eliminating undue repetition. Ward , 354 N.C. at 261, 555 S.E.2d at 270 (holding that "the questions [that defendant *327 sought to pose concerning the events that took place on the day of a murder and the witness's plea agreements] called for incompetent hearsay testimony, were unduly repetitive or argumentative, or were simply improper in form"); McNeil , 350 N.C. at 678, 518 S.E.2d at 499 (holding that "further cross-examination relating to [the witness's] unserved warrants ... would be repetitive and cumulative of the evidence already presented") (citing State v. Howie , 310 N.C. 613, 616, 313 S.E.2d 554, 556 (1984) ).
The Court's decision in this case cannot, at least in my opinion, be squared with our existing decisional law concerning the nature and extent of the trial court's authority to control the scope and extent of a defendant's ability to question a prosecution witness concerning bias-related issues arising from the existence of pending criminal charges. For example, this case does not involve the total preclusion of cross-examination concerning a witness's pending charges of the type that this Court determined to have been erroneous in Prevatte , 346 N.C. at 164, 484 S.E.2d at 378-79, and State v. Hoffman , 349 N.C. 167, 181, 505 S.E.2d 80, 89 (1998) (holding that "the trial court erred by not allowing defendant to cross-examine [a prosecution witness] regarding his pending charges for breaking and entering"). On the contrary, the cross-examination that the trial court allowed concerning Ms. Malachi's pending charges in this case was much more extensive than that deemed to be sufficient in McNeil , 350 N.C. at 676-78, 518 S.E.2d at 498-99 (holding that the trial court permitted a sufficient inquiry into a prosecution witness's pending charges by allowing "defendant wide latitude to expose [the witness's] alleged bias and motive by allowing cross-examination regarding all of [her] prior convictions" and instructing the jury that the witness was testifying pursuant to a plea agreement that provided her with a charge reduction and a sentence concession in return for her testimony, that the witness was an accomplice deemed to have an interest in the outcome of the proceeding, and that defendant contended that the witness had made false, contradictory, and conflicting statements), and Atkins , 349 N.C. at 81, 505 S.E.2d at 109 (holding that the trial court had allowed a sufficient inquiry into a prosecution's pending charges by permitting defendant to inquire "[w]hat kind of promises ... has the **457 State made you in exchange for your testimony"). Simply put, the result reached by the Court in this case is fundamentally inconsistent with our prior decisions concerning the nature and extent of a defendant's right to cross-examine prosecution witnesses concerning any pending charges that they might be facing at the time of their testimony, at least two of which have held that much more limited questioning than that which the trial court allowed in this case satisfied the requirements of the Confrontation Clause.
In summary, a careful review of the record reveals that the trial court allowed an extensive exploration of the criminal charges that Ms. Malachi was facing at the time that she testified on behalf of the State and against defendant. The evidence that defendant's trial counsel elicited during his thorough cross-examination of Ms. Malachi supplied sufficient information to support a concentrated attack upon her credibility given that Ms. Malachi admitted that she was facing serious criminal charges in Guilford County, that she was familiar with the plea negotiation process, and that no proposed plea agreement had been extended to her at the time of defendant's trial. The trial court had legitimate justification for sustaining each of the successful objections that the State asserted during the relevant portion of Ms. Malachi's cross-examination, and the Court has failed to point to any additional evidence or any additional bias-related argument that defendant would have been able to elicit in the absence of the trial court's ruling. Finally, the Court's decision conflicts with our existing jurisprudence concerning the nature and extent of a criminal defendant's right to cross-examine prosecution witnesses concerning pending criminal charges. As a result, for all of these reasons, I respectfully dissent from the Court's decision to affirm the Court of Appeals' decision that defendant should be awarded a new trial.
Justice NEWBY joins in this dissenting opinion.

Although the Court acknowledges that defendant's claim is subject to abuse of discretion, rather than de novo , review in stating the applicable standard of review, the Court does not, as best I can tell, ever take the applicable standard of review into consideration at any point in its analysis and never makes reference to the applicable standard of review in analyzing the validity of defendant's claim.

In the event that defendant believes that Ms. Malachi's statement that she hoped to achieve "[j]ustice for Anthony Johnson" was not responsive to the question that defendant posed, he could have moved to strike Ms. Malachi's statement as unresponsive.