STATE OF NORTH CAROLINA v. ERIC SCOTT GLADDEN, Defendant

No. COA03-1581

(Filed 15 February 2005)

### 1. Homicide— first-degree murder—short-form indictment—constitutionality

The short-form indictment used to charge defendant with first-degree murder was constitutional.

### 2. Evidence— autopsy photographs—illustrative purpose

The trial court did not abuse its discretion in a first-degree murder case by allowing autopsy photographs to be admitted into evidence, because: (1) the photographs were offered to illustrate the testimony of the State's pathologist; (2) the State sought to publish several photographs of the victim's face showing the gunshot wound, but the court ruled one admissible and the other two inadmissible as being cumulative; and (3) the number of photographs was not excessive when ten were admitted including seven of the victim's body wrapped in plastic and three of the victim's head, including one which showed the face.

### 3. Confessions and Incriminating Statements— interview statements to officers—voluntariness

The trial court did not err in a first-degree murder case by admitting defendant's interview statements to law enforcement officers into evidence even though defendant contends he made the various statements without a knowing and intelligent waiver of the right to counsel, because defendant failed to specifically point to any facet of the interviews which would indicate his participation was involuntary.

### 4. Evidence— husband-wife privilege—wife's observations of defendant—telephone conversation

The trial court did not err in a first-degree murder case by admitting the testimony of defendant's wife about her observations of defendant on the morning of 1 September 2000 and a transcript and tape of the 23 September 2000 phone conversation between defendant, his wife, and his stepdaughter, because: (1) although defendant contends the phone conversation he made from jail was protected by marital privilege, defendant's stepdaughter actively participated in the phone conversation with her mother and defendant, and defendant was informed prior to mak-

ing the phone call that all calls made to outside parties were subject to recording and monitoring; and (2) the wife's testimony that defendant retrieved a gun around 7:15 a.m. while she was still in the bedroom and that defendant said he was using the gun to help his grandpa kill some chicken hawks did not give rise to the conclusion that defendant's statement was made out of the confidence of the marital relationship as defendant was simply making a casual remark.

**5. Criminal Law— motion for mistrial—juror misconduct— failure to reread entire set of jury instructions**

The trial court did not err in a first-degree murder case by denying defendant's motion for a mistrial based upon juror misconduct involving a juror asking an attorney unrelated to the case to provide her with the legal definition of premeditation, and the failure of the trial court to reread the entire set of jury instructions, because: (1) the trial court interviewed both the juror and the attorney involved in the outside communications and concluded that the juror had violated an order of the court but that there was no substantial or irreparable prejudice to defendant; (2) the determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal; and (3) the decision of whether to give additional jury instructions is within the trial court's discretion, the trial court instructed on premeditation only, and here the jury foreperson asked for further instruction specifically on premeditation.

**6. Homicide— first-degree murder—motion to dismiss—sufficiency of evidence**

The trial court did not err in a first-degree murder case by denying defendant's motions to dismiss and to set aside the verdict, because the evidence viewed in the light most favorable to the State was sufficient to show that: (1) defendant admitted he shot the victim in the head and told the police that the victim had been blackmailing him over a tape of defendant's wife; (2) the victim's body was found buried on defendant's property; and (3) defendant denied any knowledge of what happened to the victim until after the body was discovered on his property and then changed his story to reveal a confrontation with the victim.

Appeal by defendant from judgment entered 12 March 2003 by Judge W. Robert Bell in Burke County Superior Court. Heard in the Court of Appeals 16 September 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jonathan P. Babb, for the State.*

*C. Gary Triggs and Law Office of Victor N. Yamouti, by Charles M. Bostian for the defendant-appellant.*

ELMORE, Judge.

Eric Scott Gladden (defendant) was convicted of first degree murder and now appeals the judgment entered against him. Defendant and William Kenneth Smith, Jr. (the victim) worked the same shift at the Great Lakes Carbon Plant in Morganton, North Carolina. The State's evidence tended to show that during his shift on the morning of 1 September 2000, the victim told Derrick Caldwell, a co-worker, that "I'm leaving here with Eric Gladden. If I come up missing, I want you to tell everybody who I left here with."

When the victim did not return home from work, his wife, Kim Smith, went to his place of work and observed his truck parked in an unusual spot. After Ms. Smith reported her husband missing, William Duplain of the Morganton Department of Public Safety began investigating the disappearance. Over the course of his investigation, Detective Duplain interviewed defendant on five separate occasions. During the first four interviews, defendant denied any knowledge of what happened to the victim. Following the fourth interview, the victim's body was discovered wrapped in plastic and buried on defendant's property. During the fifth interview, defendant admitted to shooting the victim. Defendant told Detective Duplain that the victim had been blackmailing him with a video of defendant's wife and that he shot the victim in self-defense after the victim struck him in the head with a stick.

Tammy Gladden, defendant's ex-wife, testified that around 7:15 a.m. on the morning of 1 September 2000, defendant retrieved a gun from underneath her pillow and returned home 30 to 45 minutes later. On 23 September 2000, Ms. Gladden and her thirteen-year-old daughter participated in a three-way telephone call with defendant while defendant was being held at the Burke County Jail. Defendant made the call from a phone within the jail facility's phone system, which advises each inmate via an automated message that the call is subject

to recording and monitoring. Within a few days of this call, defendant's attorney met with Lt. John R. Head, supervisor of the jail, to ask about the jail's call recording system. This inquiry prompted Lt. Head to review the recordings of defendant's recent calls. At trial, the State presented the 23 September phone conversation as an exhibit.

Dr. Robert L. Thompson, a forensic pathologist who performed the autopsy, testified that the cause of the victim's death was a single gunshot wound to the left side of the head. During the examination of Dr. Thompson, the State introduced into evidence several autopsy photographs of the victim.

At the close of the evidence, defendant made a motion to dismiss, which was denied by the trial court. During the deliberation, the jury asked the trial court for further instructions on the definition of premeditation. Defendant requested that the court reread the entire set of instructions on murder, but the court re-instructed the jury on premeditation only. Thereafter, the jury returned a verdict of guilty on the charge of first degree murder.

I.

[1] By his first assignment of error, defendant argues that the trial court erred in failing to dismiss the first degree murder indictment because it did not specifically allege the elements of premeditation and deliberation. We find no merit in defendant's argument. Our Supreme Court has repeatedly stated that the short-form indictment authorized by N.C. Gen. Stat. § 15-144 is sufficient under both state and federal constitutional standards to support a conviction of first degree murder. *State v. Maske*, 358 N.C. 40, 50, 591 S.E.2d 521, 528 (2004); *State v. Hunt*, 357 N.C. 257, 274, 582 S.E.2d 593, 604-05, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702 (2003); *State v. Braxton*, 352 N.C. 158, 173-75, 531 S.E.2d 428, 436-38 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). Defendant's assignment of error is overruled.

II.

[2] Next, defendant contends that the court erred in allowing the autopsy photographs into evidence because they were irrelevant and offered solely for the purpose of inflaming the jury. A photograph that depicts the victim's remains in an advanced state of decomposition is not inadmissible simply because it is gory and may tend to arouse prejudice. *State v. Harris*, 323 N.C. 112, 126-27, 371 S.E.2d 689, 698 (1988). "However, the admission of an excessive number of pho-

tographs, depicting substantially the same scene, may be prejudicial error where the additional photographs add nothing of probative value but tend solely to inflame the jury." *Id.* at 127, 371 S.E.2d at 689. The decision to admit photographs pursuant to Rule 403 and what constitutes an excessive number is within the discretion of the trial court. *State v. Bearthes*, 329 N.C. 149, 161, 405 S.E.2d 170, 177 (1991).

Here, the autopsy photographs were offered to illustrate the testimony of the State's pathologist. The State sought to publish to the jury several photographs of the victim's face showing the gunshot wound, but the court ruled one admissible and the other two inadmissible as being cumulative. The trial judge admitted ten photographs in all: seven photographs of the victim's body with plastic wrapped around it, and three photographs of the victim's head, one of which showed the face. We conclude that the trial court did not abuse its discretion in ruling that the photographs were more probative than prejudicial and that the number of photographs was not excessive.

## III.

**[3]** Next, defendant challenges the court's ruling to admit defendant's interview statements to law enforcement officers into evidence. Defendant argues that he made the various statements without a knowing and intelligent waiver of the right to counsel. However, defendant fails to specifically point to any facet of the interviews which would indicate his participation was involuntary. As such, we find this assignment of error without merit.

## IV.

**[4]** By two related assignments of error, defendant argues that the court erred in admitting (1) testimony by Ms. Gladden, his wife, about her observations of defendant on the morning of 1 September, and (2) a transcript and tape of the 23 September 2000 phone conversation between defendant, his wife, and his step-daughter.

Defendant contends that the 23 September 2000 phone conversation concerned confidential communications between him and his wife. We disagree. A communication between husband and wife is privileged if it was induced by the confidence of the marital relationship. *See State v. Holmes*, 330 N.C. 826, 835, 412 S.E.2d 660, 665 (1992) (citing *Hicks v. Hicks*, 271 N.C. 204, 155 S.E.2d 799 (1967)). Here though, defendant's step-daughter *actively participated* in the phone conversation with her mother and defendant. *Cf. Hicks*, 271

N.C. at 207, 155 S.E.2d at 802 (communications were confidential where couple's young daughter was present but only "singing or playing in the area" during conversation). In addition, defendant was informed prior to making the phone call that all calls made to outside parties were subject to recording and monitoring. Under these circumstances, the conversation between defendant and his wife was not confidential. As such, the admission of the three-party phone conversation did not violate the marital privilege.

Defendant also challenges on the basis of marital privilege the admission of Ms. Gladden's testimony that he retrieved a gun from their bedroom the morning of 1 September. "An action may be protected if it is intended to be a communication and is the type of act induced by the marital relationship." *Holmes*, 330 N.C. at 835, 412 S.E.2d at 665. Here, defendant retrieved a gun around 7:15 a.m. when Ms. Gladden was still in the bedroom. Defendant did nothing to indicate that he intended his action to be a confidential communication. *See State v. Hammonds*, 141 N.C. App. 152, 171-72, 541 S.E.2d 166, 179, *aff'd*, 354 N.C. 353, 554 S.E.2d 645 (2001), *cert. denied*, 536 U.S. 907, 153 L. Ed. 2d 184 (2002) (defendant's act of retrieving firearm from underneath bed was not confidential communication where wife's presence in the bedroom was incidental rather than at defendant's request). Ms. Gladden also testified that defendant told her he was using the gun to "help his grandpa kill some chicken hawks." The facts here do not give rise to the conclusion that defendant's statement was made out of the confidence of the marital relationship, as defendant was simply making a casual remark. *See Hammonds*, 141 N.C. App. at 170-71, 541 S.E.2d at 179 (casual observation is not a statement induced by the confidence of the marital relationship). Therefore, the court did not err in allowing the testimony by Ms. Gladden.

V.

[5] Next, defendant contends that the denial of his motion for a mistrial based upon juror misconduct and the failure of the trial court to reread the entire set of jury instructions constituted prejudicial error. The record establishes that on the first day of deliberations, the jury asked the court to reread the instructions on the definition of premeditation. Defendant requested that the court reread the instruction on first degree murder in its entirety, but the court re-instructed on premeditation only. During the overnight recess, one of the jurors asked an attorney unrelated to the case to provide her with the legal definition of premeditation. The attorney declined to answer the

question, and the juror did not communicate her question to any other member of the jury. The Assistant District Attorney informed the court of this development, and the court conducted a full inquiry of the juror's conduct. The court concluded that the juror had violated an order of the court but that there was no substantial or irreparable prejudice to defendant.

The trial court retains sound discretion over the scope of an inquiry into allegations of juror misconduct. *State v. Murillo*, 349 N.C. 573, 599, 509 S.E.2d 752, 767, *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999). " 'The determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal.' " *Id.* (quoting *State v. Bonney*, 329 N.C. 61, 83, 405 S.E.2d 145, 158 (1991)). In the instant case, the trial court interviewed both the juror and the attorney involved in the outside communications. We have reviewed the court's findings and conclusions and find no abuse of discretion.

We also find no error in the court's denial of defendant's request to reread the entire set of jury instructions. Our Supreme Court has noted that "the trial court is in the best position to determine whether further additional instruction will aid or confuse the jury in its deliberations, or if further instruction will prevent or cause in itself an undue emphasis being placed on a particular portion of the court's instructions." *State v. Prevette*, 317 N.C. 148, 164, 345 S.E.2d 159, 169 (1986). Thus, the decision of whether or not to give additional jury instructions is within the trial court's discretion. *Id.* Here, the jury foreperson asked for further instruction specifically on premeditation. It was not an abuse of discretion for the trial court to instruct on premeditation only.

## VI.

[6] Finally, defendant assigns as error the court's denial of his motions to dismiss and to set aside the verdict. In ruling on a motion for dismissal, the trial court must view the evidence in the light most favorable to the State, drawing all reasonable inferences in favor of the State. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). "[C]ontradictions and discrepancies do not warrant dismissal of the case [but] are for the jury to resolve." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982). The question for the court is whether a reasonable inference of the defendant's guilt may be drawn from the evidence. *Id.* at 67, 296 S.E.2d at 652.

**WALKER v. PENN NAT'L SEC. INS. CO.**

[168 N.C. App. 555 (2005)]

The evidence at trial, viewed in the light most favorable to the State, tended to show the following: defendant admitted that he shot the victim in the head and told the police that the victim had been blackmailing him over a tape of defendant's wife; the victim's body was found buried on defendant's property; and defendant denied any knowledge of what happened to the victim until after the body was discovered on his property and then changed his story to reveal the 1 September confrontation. The State's evidence was sufficient to support the jury's verdict, and thus the court properly denied defendant's motions.

No error.

Judges CALABRIA and STEELMAN concur.