STATE OF NORTH CAROLINA v. JAMES W. DURHAM, Defendant

No. COA05-272

(Filed 21 February 2006)

## 1. Constitutional Law— right to confrontation—expert testimony based on report

The introduction of an autopsy report by a non-testifying pathologist did not violate defendant's confrontation rights under *Crawford v. Washington*, 541 U.S. 36, and was not plain error. The pathologist who testified was accepted as an expert, had observed the autopsy, and relied on the report of the pathologist who performed the autopsy (who has since taken employment outside North Carolina). The report was tendered as evidence of the basis of the expert witness's opinion, and defendant was given the opportunity to cross-examine the expert.

## 2. Homicide— lesser included offense—sufficiency of evidence

The evidence at trial could not have supported a verdict of voluntary manslaughter and the trial court did not err by not instructing the jury on that lesser included offense in a prosecution for second-degree murder. Although defendant contended that the shooting occurred during a struggle after an earlier confrontation, there was evidence that defendant initiated the confrontation, evidence that tended to show an unlawful killing with malice, and the defense was that defendant did not shoot the victim.

STATE v. DURHAM

[176 N.C. App. 239 (2006)]

**3. Evidence— exhibit excluded—two dimensional**

The exclusion of a defense exhibit showing the trajectory of the bullets that hit the victim was not an abuse of discretion where the trial court stated that the exhibit was two dimensional, and possibly misleading, as opposed to the pathologist's three dimensional testimony.

**4. Sentencing— aggravating factor—not submitted to jury— no stipulation**

Finding an aggravating factor (using a weapon hazardous to more than one person) without submitting it to the jury or a stipulation from defendant resulted in the remand of sentences for second-degree murder and discharging a weapon into occupied property.

Appeal by Defendant from convictions and sentences entered 19 August 2003 by Judge Robert H. Hobgood in Superior Court, Vance County. Heard in the Court of Appeals 24 January 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Joan M. Cunningham, for the State.*

*M. Gordon Widenhouse, Jr., for defendant-appellant.*

WYNN, Judge.

The admission of expert opinion based upon information not itself admissible into evidence does not violate the Sixth Amendment right of confrontation where the expert is available for cross-examination.[1] Here, Defendant contends that expert testimony based on an autopsy conducted by someone other than the testifying expert violated his right to confrontation under the rationale of the *Crawford* decision.[2] Because Defendant had an opportunity to cross-examine the expert, and the autopsy report on which the expert testimony was based was not hearsay, we affirm the admission of the expert testimony.

We further find no error in the remaining assignments of error except that we must remand for resentencing under the *Blakely* decision.[3]

1. *See State v. Huffstetler*, 312 N.C. 92, 108, 322 S.E.2d 110, 120 (1984).

2. *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004).

3. *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004).

STATE v. DURHAM

[176 N.C. App. 239 (2006)]

The record reflects that during the late afternoon of 18 May 2001, cousins Rickie and Charles Downey were at their grandmother's house when Defendant James W. Durham beckoned Rickie to come over to the house next door. The two men then argued about drugs that Defendant thought Rickie had stolen from him. When Charles heard Defendant say, "I'll beat your ass, boy," he pulled Rickie back to their grandmother's front porch.

Late that evening, Charles and Rickie rode to a local nightclub— Charles drove because Rickie was drunk and asleep during the drive. When Charles pulled into the parking lot of the nightclub, he saw a white Jeep belonging to Kip Hargrove, Defendant's cousin. Charles tried to turn around but the car stalled almost directly in front of Hargrove's Jeep. While Charles attempted to restart the car, Defendant reached inside the car with a revolver in his hand.

According to Charles, Defendant put the revolver in Rickie's face, and said, "[w]hat's up now, n—ger." Defendant then opened the door and got into the car. Rickie awoke, grabbed Defendant's gun and struggled over the gun with Defendant. Meanwhile, Charles opened the driver's door, rolled out of the car, ducked behind the back seat door, raised up to look into the car, and saw Defendant shooting Rickie in the chest.

After the shooting, Charles got back into the car, moved Rickie's leg off the gear shift, reached over Rickie to shut the passenger side door, took a fully loaded revolver from under the passenger's seat and threw it out of the car window from the driver's side. The gun was later retrieved with no rounds fired. Charles then drove Rickie to the hospital, but Rickie died before they arrived.

Other State witnesses included Hargrove who agreed to testify under a plea agreement with the State, whereby he pled guilty to accessory after the fact to voluntary manslaughter. The State also presented expert testimony from Dr. Deborah Radisch of the Office of the Chief Medical Examiner. Dr. Radisch testified that she was present and observed the victim's autopsy, but that the autopsy was actually performed by Dr. Karen Chancellor, a forensic pathologist who had since left North Carolina for employment elsewhere.

Defendant presented evidence at trial tending to indicate that he was standing near or inside the nightclub when the gunshots were fired and that he did not have a gun that evening. Defendant also presented expert testimony from Michael Grissom, an independent

crime scene investigator. Grissom testified that he examined the car where the victim was sitting when he was shot. He observed that the right front passenger seat was reclined, but that he found no bullet holes in the seat or in the front right door. Grissom attempted to testify using a diagram that he drew to illustrate the victim's body in the car, however, the trial court excluded the diagram from evidence.

Defendant was convicted of one count of second degree murder and one count of discharging a weapon into occupied property. The trial court sentenced Defendant to a term of 237 to 294 months for the second degree murder conviction and thirty-six to fifty-three months for the discharging a weapon into occupied property conviction, to run consecutively. Defendant appeals.

---

[1] On appeal, Defendant argues that the trial court committed plain error by allowing the prosecution to introduce evidence of an autopsy report performed by a non-testifying pathologist because the admission of that evidence violated his confrontation rights under the rationale of *Crawford*, 541 U.S. 36, 158 L. Ed. 2d 177. We disagree.

In *Crawford*, the United States Supreme Court held that a witness's recorded out-of-court statement to the police regarding the defendant's alleged stabbing of another was testimonial in nature and thus inadmissible due to Confrontation Clause requirements. *Id.* However, the Supreme Court stated: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Id.* at 68, 158 L. Ed. 2d at 203. *Crawford* made explicit that its holding does not apply to evidence admitted for reasons other than proving the truth of the matter asserted. *Id.* at 60 n.9, 158 L. Ed. 2d at 198 n.9 (stating that the Confrontation "Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (citation omitted)).

In North Carolina, our Supreme Court has held that "testimony as to information relied upon by an expert when offered to show the basis for the expert's opinion is not hearsay, since it is not offered as substantive evidence." *Huffstetler*, 312 N.C. at 107, 322 S.E.2d at 120 (citing *State v. Wood*, 306 N.C. 510, 294 S.E.2d 310 (1982)). Indeed, "it is the expert opinion itself, not its underlying factual basis, that constitutes substantive evidence[,]" and that "[a]n expert may properly base his or her opinion on tests performed by another person, if the

tests are of the type reasonably relied upon by experts in the field." *State v. Fair*, 354 N.C. 131, 162, 557 S.E.2d 500, 522 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002) (citation omitted).

As it relates to expert testimony and the Confrontation Clause, our Supreme Court held that "[t]he admission into evidence of expert opinion based upon information not itself admissible into evidence does not violate the Sixth Amendment guarantee of the right of an accused to confront his accusers where the expert is available for cross-examination." *Huffstetler*, 312 N.C. at 108, 322 S.E.2d at 120 (citation omitted).

In this case, after a recitation of her credentials, Dr. Radisch was tendered and accepted, without objection by Defendant, as an expert in forensic pathology. Dr. Radisch relied on the autopsy report in forming her opinion that the cause of the victim's death was due to a gunshot wound to the right of the abdomen into the chest, and her opinion was based on data reasonably relied upon by others in the field. *See Fair*, 354 N.C. at 162, 557 S.E.2d at 522. It is clear that Dr. Radisch's testimony was expert testimony as to the cause of Rickie's death. We therefore hold that the autopsy report was not tendered to prove the truth of the matter asserted therein, but to demonstrate the basis of Dr. Radisch's opinion.

Since it is well established that an expert may base an opinion on tests performed by others in the field and Defendant was given an opportunity to cross-examine Dr. Radisch on the basis of her opinion, we conclude that *Crawford* does not apply to the circumstances presented in this case. *See Huffstetler*, 312 N.C. at 108, 322 S.E.2d at 120; *State v. Delaney*, 171 N.C. App. 141, 143, 613 S.E.2d 699, 700 (2005) (holding that expert testimony regarding the chemical analysis of drugs which was based on analyses conducted by someone other than the testifying expert did not violate defendant's right of confrontation); *State v. Walker*, 170 N.C. App. 632, 635-36, 613 S.E.2d 330, 333 (2005) (holding that the expert ballistics testimony of an agent that included a non-testifying agent's report did not violate the Confrontation Clause); *State v. Lyles*, 172 N.C. App. 323, 325, 615 S.E.2d 890, 894 (2005) (holding that a drug lab report of non-testifying analyst was properly admitted as the basis of expert opinion testimony by analyst's supervisor and did not violate the confrontation clause). Thus, we reject this assignment of error.

[2] Defendant next contends that because the State's evidence did not unequivocally show the greater offense of second degree murder,

the trial court erred by failing to instruct the jury on the lesser included offense of voluntary manslaughter. We disagree.

Second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Jenkins*, 300 N.C. 578, 591, 268 S.E.2d 458, 466-67 (1980). "[T]o reduce second degree murder to voluntary manslaughter, there must be some evidence that the defendant killed his victim in the heat of passion engendered by provocation which the law deems adequate to depose reason." *State v. Burden*, 36 N.C. App. 332, 334-35, 244 S.E.2d 204, 205, *disc. review denied*, 295 N.C. 468, 246 S.E.2d 216 (1978) (internal citation and quotation omitted). Words alone are never sufficient provocation to mitigate second degree murder to voluntary manslaughter. *State v. Watson*, 287 N.C. 147, 156, 214 S.E.2d 85, 91 (1975).

Defendant argues that the evidence at trial would have supported a reasonable finding by the jury that, assuming he shot the victim, he did not act with malice. Defendant contends there was evidence to show that when he allegedly shot the victim, it occurred during a struggle and after the two had been involved in a confrontation earlier that day. However, the amount of time that elapsed between the earlier confrontation and the time of the shooting does not support an argument that Defendant acted in the heat of passion upon provocation thus entitling him to a jury instruction on voluntary manslaughter. ·

To the contrary, the State presented evidence through Charles's testimony that Defendant initiated the confrontation with the victim. Charles testified that Defendant approached the car while the victim was asleep in the passenger's seat, reached into the car with a chrome, silver revolver, and put the revolver in the victim's face and said, "[w]hat's up now, n—ger[.]" After Defendant opened the passenger's car door, the victim and Defendant struggled over Defendant's gun inside the car. Charles then opened the driver's car door, rolled out of the car and ducked behind the back door. Charles further testified that he raised up to look into the car and saw Defendant shooting Rickie in the chest. Dr. Radisch, the expert forensic pathologist, testified that the victim had ten bullet wounds, and died as a result of a gunshot wound to the chest. Such evidence unequivocally tends to show an unlawful killing with malice.

Defendant, on the other hand, presented testimony through several witnesses that he did not have a gun on the night of the shoot-

ing, and that he was standing in the doorway of the building, not beside the car in which the victim was killed, when the gunshots were fired. "[A] defendant is not entitled to have the jury consider a lesser offense when his sole defense is one of alibi[.]" *State v. Corbett*, 339 N.C. 313, 335, 451 S.E.2d 252, 264 (1994). Indeed, our Supreme Court has held:

> where a defendant's sole defense is one of alibi, he is not entitled to have the jury consider a lesser offense on the theory that jurors may take bits and pieces of the State's evidence and bits and pieces of defendant's evidence and thus find him guilty of a lesser offense not positively supported by the evidence.

*State v. Brewer*, 325 N.C. 550, 576, 386 S.E.2d 569, 584 (1989). Here, Defendant's sole defense was simply that he did not shoot the victim at all. Defendant did not concede in any way that he may have been near the car where the victim was shot, or that he shot him in a heat of passion or in self-defense. Because the evidence presented at trial would not have supported a verdict finding Defendant guilty of voluntary manslaughter, and Defendant's only defense to the murder charge was that he was not present at the time of the shooting, the trial court did not err in failing to submit the lesser included offense to the jury.

[3] Defendant next contends the trial court improperly excluded from evidence an exhibit prepared by Defendant's expert that purported to show the trajectory of the ten bullets that hit the victim. Defendant argues that the trial court's exclusion of this evidence deprived him of his constitutional right to present evidence at his trial. We disagree.

The admissibility of evidence is governed by Rule 403 of the North Carolina Rules of Evidence, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C. Gen. Stat. § 8C-1, Rule 403 (2005).

Rulings under North Carolina Rule of Evidence 403 are discretionary, and a trial court's decision on motions made pursuant to Rule 403 are binding on appeal, unless the dissatisfied party shows that the

trial court abused its discretion. *State v. Garcia*, 358 N.C. 382, 417, 597 S.E.2d 724, 749 (2004), *cert. denied,* —— U.S. ——, 161 L. Ed. 2d 122 (2005). A trial court abuses its discretion when the "ruling was 'manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Hyde*, 352 N.C. 37, 55, 530 S.E.2d 281, 293 (2000), *cert. denied*, 531 U.S. 1114, 148 L. Ed. 2d 775 (2001) (quoting *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)) (alteration in original).

In the instant case, the trial court, after conducting a *voir dire* of Defendant's expert, listening to counsel's arguments, and reviewing the exhibit, ruled on the admissibility of the evidence, stating:

> The Court makes the following ruling under Rule 403. First of all, the exhibit may be relevant; it may be probative; however, the exhibit is two-dimensional. The testimony of Dr. Radisch was three-dimensional. Therefore, the Court does not find that even if relevant and probative, Defendant's Exhibit 18, its probative value is substantially outweighed by the danger of misleading the jury in that it is a two-dimensional exhibit and does not show what Dr. Radisch testified to in three-dimensional form. So the [State's] objection is sustained on that ground.

In light of this explanation, we find no abuse of discretion by the trial court in excluding Exhibit 18. Accordingly, Defendant's assignment of error is without merit.

**[4]** In his final argument on appeal, Defendant contends that the trial court erred in finding an aggravating factor and sentencing him within the aggravated range in violation of his Sixth Amendment right to a jury trial. *See Blakely*, 542 U.S. 296, 159 L. Ed. 2d 403. We agree.

In *State v. Allen*, our Supreme Court recognized that under the *Blakely* holding, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." *State v. Allen*, 359 N.C. 425, 437, 615 S.E.2d 256, 265 (2005); *see also State v. Speight*, 359 N.C. 602, 606, 614 S.E.2d 262, 264 (2005). The Court therefore held that "those portions of N.C.G.S. § 15A-1340.16 (a), (b), and (c) which require trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon judicial findings of such aggravating factors by a preponderance of the evidence violate the Sixth Amendment to the United States

Constitution." *Allen,* 359 N.C. at 438-39, 615 S.E.2d at 265. Accordingly, our Supreme Court concluded that "*Blakely* errors arising under North Carolina's Structured Sentencing Act are structural and, therefore, reversible *per se.*" *Id.* at 444, 615 S.E.2d at 269.

In this case, the trial court found the following aggravating factor in Defendant's convictions: "The defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." The facts for this aggravating factor were neither presented to a jury nor proved beyond a reasonable doubt. Nor did Defendant stipulate to this aggravating factor. *Allen,* 359 N.C. at 439, 615 S.E.2d at 265. Under *Allen* and *Speight,* we must remand this matter for resentencing.

No error in part, remanded for resentencing.

Judges HUNTER and JACKSON concur.