STATE OF NORTH CAROLINA
v.
MARTIN TERRELL LENDER, Defendant.
No. COA06-1632
Court of Appeals of North Carolina.
Filed October 2, 2007
This case not for publication
Attorney General Roy Cooper, Assistant Attorney General Leonard G. Green, for the State.
Office of the Appellate Defender Staples Hughes, Assistant Appellate Defender Matthew D. Wunsche, for defendant.
BRYANT, Judge.
Martin Terrell Lender (defendant) appeals from a judgment entered 17 April 2006 consistent with jury verdicts finding him guilty of voluntary manslaughter and possession of a weapon of mass destruction. Defendant was sentenced within the presumptive range to a term of sixty-four to eighty-six months imprisonment for voluntary manslaughter and a consecutive sentence within the presumptive range to a term of sixteen to twenty months imprisonment for possession of a weapon of mass destruction. Defendant was also ordered to pay $6,038.74 in restitution. We find defendant has received a trial free from error, but reverse and remand to the trial court for resentencing as to restitution. Defendant resided with his mother and his girlfriend, Tara Wilkes. Steven Wilkes (Ms. Wilkes' brother), Crystal Best (Steven's girlfriend) and their baby also stayed in defendant's home. At about midnight on 12 August 2004, Michael Fields, defendant's cousin, visited the home. Mr. Fields told Ms. Wilkes to tell Steven that he better "have my gun or my money one." The next morning, when Ms. Wilkes relayed Mr. Fields' message, Steven told her to stay out of his business and proceeded to assault and choke his sister. Ms. Wilkes called out to defendant for help. Defendant pulled Steven off of Ms. Wilkes. Defendant and Steven tussled down the hallway for a few minutes. After the altercation, defendant went outside and was followed by Steven. When Ms. Wilkes went outside, she saw Steven standing at the front of defendant's car. Defendant was standing at the rear of his car with the trunk open while he argued with Steven. Steven began walking toward defendant. Ms. Wilkes heard Steven tell defendant to stay out of his and his sister's business. Ms. Wilkes testified she saw a gun in defendant's hands while Steven was walking toward defendant with empty hands which were down by his side. Defendant then shot Steven in the chest. Crystal Best, Steven's girlfriend, testified similar to Tara Wilkes except as follows: Steven and defendant were not arguing during their final discussion; Steven told Ms. Best to get the baby so they could leave; and that Steven was not walking towards defendant, but was backing away from the car when defendant shot him. Defendant testified that on 11 August 2004 he applied for a handgun permit to start his personal gun collection. Defendant testified he told Steven to leave and Steven told defendant to "get out of me and my sister [sic] business." Without saying anything else to Steven, defendant went outside, and Steven followed. Defendant and Ms. Wilkes testified Steven was yelling and had not calmed down since assaulting his sister. Further, defendant testified Steven said, "If you ever touch me like that GD. again [sic], I'll pop a God D. hole in you." Defendant testified he told Steven to leave and Steven said, "no, . . . you know what I'm saying, if you got that gun you might as well pull it because I'm going to pop a hole in your ass." During these remarks, defendant stood near his trunk and Steven stood near one of the back tires. At that point, defendant testified that he did not have a gun in his hand. Steven turned around to tell Ms. Best to get the baby so they could leave. Then, according to defendant's testimony, Steven walked quickly toward defendant with his left hand behind his back. As Steven advanced, defendant opened the car trunk and removed a shotgun. Defendant testified Steven looked angry and said, "if you got your damn gun you might as well get it because I'm going to pop a hole in your ass." As Steven turned the corner of the rear of the car, defendant raised the gun and fired one shot that struck him in the chest. Defendant testified he did not want Steven to get any closer because he thought he might have a gun, although he was not certain. After shooting Steven, defendant discarded his gun and left the scene. Shortly thereafter, officers who responded to the 911 call found defendant in an abandoned house and the gun in the bushes near defendant's home.
On 4 April 2005, defendant was indicted for second degree murder and possession of a weapon of mass destruction. On 25 January 2006, defendant filed a motion for physical examination to address his competency to stand trial. On 17 March 2006, two forensic psychiatrists declared defendant competent to stand trial. The jury acquitted defendant of second degree murder, but found him guilty of voluntary manslaughter and possession of a weapon of mass destruction. Defendant appeals.
Defendant appeals whether the trial court erred by: (I) admitting a redacted photograph of defendant; (II) allowing defendant's attorney to reference a "gun deal" in his opening statement; (III) allowing the State to introduce photographs of the victim's gunshot wound; (IV) instructing the jury on voluntary manslaughter; (V) failing to find mitigating factors in determining defendant's sentence; and (VI) ordering defendant to pay $6,038.74 in restitution.

I
Defendant argues the trial court erred by admitting a redacted photograph of defendant because it gave the appearance of a criminal in a "mug shot." On appeal, the standard of review is whether the trial judge abused its discretion. State v. Blackstock, 314 N.C. 232, 333 S.E.2d 245 (1985). Defendant contends the trial court abused its discretion under (1) Rule 403 because the photograph implied defendant had prior experience with the police and thus was a bad character and (2) Rule 404(b) because the photo was shown as evidence defendant engaged in prior bad acts. To prevail on his argument defendant must show that the trial court's ruling was "so arbitrary that it could not have been the result of a reasoned decision." State v. Thompson, 314 N.C. 618, 626, 336 S.E.2d 78, 82 (1985).
The State sought to introduce two photos to show the height and weight disparity between the victim, Steven Wilkes, and defendant to support the theory that defendant used excessive force because defendant was significantly larger than the victim. The trial court only allowed one photo, the front view of defendant and determined the other photo, the profile view, was unduly prejudicial. The trial court gave a limiting instruction stating the photo was not substantive evidence, but was admitted only for illustrative purposes.
A decision on whether the probative value of particular evidence is substantially outweighed by a danger of unfair prejudice is within the sound discretion of the trial judge. State v. Mason, 315 N.C. 724, 340 S.E.2d 430 (1986); N.C. Gen. Stat. § 8C-1, Rule 403 (2005). In the present case, all identifying marks including police information were removed from the photo, which was used solely for illustrative purposes. See State v. Hatcher, 277 N.C. 380, 389, 177 S.E.2d 892, 901 (1970) (holding that redacting the name of the police department and other identifying information from a photo was sufficient to remove any danger of unfair prejudice where there was nothing on the photo to connect defendant with previous criminal offenses), overruled on other grounds by State v. Hurst, 320 N.C. 589, 359 S.E.2d 776 (1987).
As for defendant's 404(b) challenge, the record indicates the photo was introduced solely to illustrate the officers' testimony, not as substantive evidence of any bad acts by defendant. The photo was not used as substantive "[e]vidence of other crimes, wrongs, or acts . . . in order to prove the character of a person to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). Defendant has failed to show the trial court abused its discretion by admitting the redacted photograph of defendant. See State v. Young, 60 N.C. App. 705, 708, 299 S.E.2d 834, 836 (1983) ("The record indicates that the police information on defendant's mug shots was sufficiently covered over so as to avoid prejudicing the jury."). This assignment of error is overruled.

II
Defendant argues the trial court erred by allowing defendant's trial attorney to reference a "gun deal" in his opening statement. Defendant argues this statement was prejudicial and amounted to ineffective assistance of counsel. Defendant also maintains the trial court erred by allowing the prosecutor to refer to a "gun deal" during his closing statement. We disagree.
To succeed on a claim for ineffective assistance of counsel "[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result was reliable." State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 250 (1985) (quoting from Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674 (1984)).
Defendant asserts his trial attorney improperly stated to the jury that defendant was involved in a "gun deal" with Steven Wilkes and Mr. Fields. However, there is no explicit reference that defendant had a role in the gun transaction, merely an indirect pronoun reference using the word "he." The two subsequent phrases in defense counsel's opening statement, that "Mr. Fields had gone past Mr. Lender's house and requested that he see Steve Wilkes," and "Mr. Wilkes, the decedent, the brother of Tara Wilkes, was looking to sell these guns to a particular individual named Phil," clarify that defense counsel was identifying Steven Wilkes and Mr. Fields as the parties to the gun deal.
Defendant claims reference to a gun transaction harmed his credibility with the jury. However, defendant admitted he had applied for a handgun permit that very day, and was planning to start collecting guns. From these facts, the jury could deduce defendant was obtaining the proper permit to legally begin his gun collection. Thus, the implication that he was discussing the purchase of a gun from Mr. Fields is consistent with defendant's actions and his own trial testimony. Defendant has not shown his counsel's statement deprived defendant of a fair trial.
Defendant also asserts the prosecutor, during closing arguments, improperly characterized defendant's participation in the gun discussions on the night of 11 August 2004. As a result, defendant argues the trial court erred by failing to intervene ex mero motu. Defendant cites the following portion of the prosecutor's closing argument:
Well, you heard evidence that Mr. Lender was involved in a gun deal that very same [sic] day. He was going down to get a permit to purchase a handgun. But the fact that somebody was going to do some kind of deal for a cousin of this defendant, Mr. Lender, doesn't mean that he acted in self-defense. It's something for the defense, I would say, to put up and say, well, look at this, this is what Mr. Wilkes was doing the night before.
Defendant did not object to this portion of the prosecutor's closing argument. Pursuant to N.C. Gen. Stat. § 15A-1230, an attorney "[m]ay not . . . make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice." N.C. Gen. Stat. § 15A-1230 (2005). An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue. Id. This Court "ordinarily will not review the exercise of the trial judge's discretion in this regard unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations." State v. Johnson, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979) (citation omitted). Here, the prosecutor's use of the evidence regarding defendant's application for a gun permit and presence during discussions of a gun transaction between Steven Wilkes and Mr. Fields was a proper argument arising from the evidence. See State v. Anderson, 322 N.C. 22, 37, 366 S.E.2d 459, 468 (1988) ("Counsel may argue the facts in evidence and all reasonable inferences that may be drawn therefrom together with the relevant law in presenting the case."), cert. denied, 488 U.S. 975, 102 L. Ed. 2d 548 (1988). Thus, defendant has not shown an abuse of discretion by the trial court. This assignment of error is overruled.

III
Defendant argues the trial court erred by allowing the State to introduce photographs of the victim's gunshot wound. Defendant asserts the trial court violated Rule 403 of the Rules of Evidence because the prejudicial effect of the photographs outweighed their probative value. We disagree.
The proper standard for determining whether to "admit photographs pursuant to Rule 403 and what constitutes an excessive number [of photographs]" is an abuse of the trial court's discretion. State v. Gladden, 168 N.C. App. 548, 552, 608 S.E.2d 93, 95-96 (2005) (citation omitted). The trial court must discern whether certain evidence is so inflammatory that "its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence[.]" N.C.G.S. § 8C-1, Rule 403; See State v. Mason, 315 N.C. 724, 731, 340 S.E.2d 430, 437 (1986). Defendant must show that the trial court's decision was "so arbitrary that it could not have been the result of a reasoned decision." Thompson, 314 N.C. at 626, 336 S.E.2d at 82.
Defendant objects to the introduction of: (1) three "crime scene photos" of the deceased lying on the floor of the home with a gunshot wound to his chest and blood coming from his nose and mouth; and (2) two "autopsy photos," one which showed a closeup of the chest wound.
With regard to the "crime scene photos," the trial court ruled the probative value of the photos outweighed any potential for unfair prejudice because they bolstered the State's proof of malice, an essential element of the second degree murder charge. The crime scene photos were used to illustrate the identity of the victim, his size, the position of the body and the nature of the wound sustained by the victim.
With regard to the "autopsy photos," the trial court, while acknowledging that the depiction of the wound was "gory," ruled the probative value of the photos outweighed any potential for unfair prejudice. The trial court determined the photos showed a closer and more definitive view of the wound, were corroborative evidence of the victim's wound, and were useful in illustrating the medical examiner's testimony.
On the record, we determine these photos depicting the damage inflicted by defendant, in combination with the witnesses' testimony, were properly admitted for illustrative purposes by the trial court. State v. Blakeney, 352 N.C. 287, 309-10, 531 S.E.2d 799, 816 (2000) (quotations and citations omitted), cert. denied,531 U.S. 1117, 148 L. Ed. 2d 780 (2001). These assignments of error are overruled.

IV
Defendant argues the trial court committed plain error by instructing the jury on the lesser included offense of voluntary manslaughter because there was insufficient evidence to support theories of aggressor and imperfect self-defense. We disagree.
Unlawful killing "with malice but without premeditation and deliberation" is second degree murder. State v. Durham, 176 N.C. App. 239, 244, 625 S.E.2d 831, 835 (2006). In contrast, the lesser included offense of voluntary manslaughter is defined as "an intentional killing without premeditation, deliberation or malice . . . [either] in the heat of passion . . . or in the exercise of imperfect self-defense where excessive force under the circumstances was used." State v. Lyons, 340 N.C. 646, 663, 459 S.E.2d 770, 779 (1995) (citation omitted). A defendant is "`entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'" State v. Leazer, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (quoting Keeble v. United States, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973)).
The eye witness testimony (from Ms. Wilkes, Ms. Best and defendant) varied as to Steven Wilkes' actions just prior to being shot by defendant. Had the jury afforded greater weight to Ms. Best's version of the events, the jury may have concluded imperfect-self defense occurred where Steven was no longer arguing with defendant and was attempting to leave the premises. The jury could also have concluded defendant refused to allow Steven to end the argument, became the aggressor and used excessive force against Steven. See State v. Cannon, 341 N.C. 79, 82, 459 S.E.2d 238, 240-241 (1995) (a person may be the aggressor even though he did not start the confrontation, if he prolongs it). In the alternative, if the jury believed Ms. Wilkes' version of the events, then a conclusion that Steven was the aggressor, but defendant used excessive force in response, would be supported. Finally, the jury may not have decided the case on imperfect self-defense, but instead found the State failed to prove malice and concluded defendant was guilty of voluntary manslaughter, the lesser included offense of second degree murder.
Where defendant did not object at trial, he has not shown the probability the jury would have acquitted him but for the trial court's jury instructions. State v. Walker, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). This assignment of error is overruled.

V
Defendant alleged the trial court erred by failing to find mitigating factors. The trial court has great discretion in determining the existence of aggravating and mitigating factors. State v. Graham, 309 N.C. 587, 592, 308 S.E.2d 311, 315 (1983). Defendant bears the burden of proof by a preponderance of the evidence regarding mitigating factors. State v. Jones, 309 N.C. 214, 219, 306 S.E.2d 451, 455 (1983); see also N.C. Gen. Stat. § 15A-1340.16 (2005). It is well settled that the trial court is not required to make findings of mitigating or aggravating factors when the court sentences defendant within the presumptive range of sentences for his offense. State v. Brooks, 136 N.C. App. 124, 133, 523 S.E.2d 704, 710 (1999), disc. review denied, 351 N.C. 475, 543 S.E.2d 496 (2000).
At sentencing, defendant alleged multiple mitigating factors, including, inter alia, his relationship and interaction with Steven Wilkes; defendant's mental state; and defendant's community status for the trial court to consider. After hearing these factors, the trial court responded:
[Defendant] presented no evidence of any extenuating circumstances in his relationship with Steven Wilkes. Indeed, all of the evidence was that he and Steven Wilkes had been best friends from childhood. . . .[A]lthough defendant's mother made a statement to the judge expressing her love for her son, there was no evidence of a family support system.
. . .
[Defendant], the problem here is that the court would have been much more inclined to fashion some form of mitigating sentence had your testimony been much more conforming with the facts of the case, your prior statement and had it sounded more truthful.
Based on the trial court's analysis of the lack of evidence presented in mitigation, the trial court did not err in concluding the alleged mitigating factors were not supported by the evidence. See State v. Teeter, 85 N.C. App. 624, 355 S.E.2d 804, appeal dismissed and cert. denied, 320 N.C. 175, 358 S.E.2d 67 (1987) (The weight to be given aggravating and mitigating factors is clearly within the sound discretion of the trial judge, whose decision will not be disturbed absent an abuse of that discretion.). Furthermore, where defendant was sentenced within the presumptive range for his offenses, the trial court was not required to make findings in mitigation. This assignment of error is overruled.

VI
"The amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing." State v. Shelton, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004) (citation and quotation omitted); see also N.C. Gen. Stat. § 15A-1340.35 (2005). Here, the prosecutor submitted a restitution worksheet indicating that the cost of the funeral was $6,038.74. Defendant did not contest this amount. A defendant's failure to contest the restitution worksheet was not a stipulation to the restitution amount. State v. Replogle, ___ N.C. App. ___, ___, 640 S.E.2d 757, 761 (2007). As in Replogle, the trial court's order of restitution was based entirely on the State's restitution worksheet. Ultimately, "unsworn statements of the prosecutor . . . [do] not constitute evidence and cannot support the amount of restitution recommended." State v. Buchanan, 108 N.C. App. 338, 341, 423 S.E.2d 819, 821 (1992). Therefore, we reverse on the issue of restitution and remand to the trial court for resentencing consistent with this decision. See Replogle, ___ N.C. App. at ___, 640 S.E.2d at 761 (remanded "because the State failed to produce any evidence on the issue of restitution at sentencing").
No error in part, reversed and remanded for resentencing in part.
Judges WYNN and HUNTER concur.
Report per Rule 30(e).